IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THE CENTER FOR GESTALT           )
DEVELOPMENT, INC.,               )
                       Plaintiff )
                                 )
**v.**                           )
                                 )   Cause No. 1:22-CV-2185-RLY-TAB
CHARLES BOWMAN                   )
                      Defendant. )   **JURY TRIAL DEMANDED**

**Defendant's Answer to Plaintiff's Complaint, Affirmative Defenses
and Demand for Jury Trial**

Defendant, Charles Bowman, by counsel files his Answer, and Affirmative Defenses to

the allegations in the Complaint, and states as follows:

1.      This action for copyright infringement against Defendant Charles Bowman is

related to a separate action for copyright infringement arising from the facts alleged herein that

the Center previously commenced against Charles Bowman (the Defendant here) and two other

named defendants, Jean-Marie Robine ("Robine") and the Institut Français de Gestalt-thérapie

("L'Exprimerie") (together with Robine, the "French defendants") in United States District

Court  for the Eastern District of Pennsylvania (the "Pennsylvania Court"), currently pending

as  *The  Center for Gestalt Development Inc. v. Charles Bowman, Jean-Marie Robine, and the

Institut  Français de Gestalt-thérapie*, No. 2:22-cv-02058-JDW (E.D. Pa.) (the "Pennsylvania

Action").

**Answer: Defendant admits the material allegations contained in rhetorical**

**Paragraph 1 of Plaintiff's Complaint.**

2.      On July 27, 2022, Bowman, an Indiana resident, moved to dismiss the

claims  against him in the Pennsylvania Action for lack of personal jurisdiction and

venue.   On October  19, 2022, the Pennsylvania Court ruled on Bowman's motion and

concluded that Bowman  lacked sufficient contacts with Pennsylvania to support personal

jurisdiction and venue in that   district and dismissed the Center's claims against Bowman

without prejudice.

**Answer: Defendant admits the material allegations contained in rhetorical**

**Paragraph 2 of Plaintiff's Complaint.**

3.      The Center files this Complaint to reassert its claims against Bowman in this

Court. Shortly after commencing this action, the Center intends to file a motion to transfer in

the Pennsylvania Court seeking to transfer the Pennsylvania Action (in which the Center's

related claims against the French defendants remain pending) to this Court so that the Center's

closely related copyright claims against Bowman and the French defendants can be

consolidated  in this Court.

**Answer: Defendant states that this paragraph asserts a legal conclusion to which no**

**answer is required. Defendant is otherwise without sufficient knowledge to admit or deny**

**the allegations set forth in Paragraph 3 of Plaintiff's Complaint, and therefore denies the**

**same.**

**NATURE OF THE**
**ACTION**

4.      This is an action for injunctive, monetary, and declaratory relief arising from

Defendant's willful infringement of the Center's exclusive rights in an unpublished

manuscript  authored by the pioneering psychiatrist Frederick Perls, M.D., entitled *The*

*Psychopathology of  Awareness* (the "Copyrighted Manuscript").   A true and correct copy of

the Copyrighted Manuscript deposited with the United States Copyright Office under

Registration No. TXu 463- 603, together with the United States Copyright Office Public
Catalogue entry for that registration, is attached as Exhibit A.

**Answer: Defendant is without knowledge of the allegations and therefore denies the
same.**

5.      Frederick Perls was an iconic psychiatrist who is widely recognized as the
founder of Gestalt therapy, an influential form of psychotherapy that Perls first conceived in
the  1940s and that has benefited thousands of people around the world.

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations set forth in Paragraph 5 of Plaintiff's Complaint, and
therefore denies the same.**

6.      Before his death in 1970, Frederick Perls authored several seminal published
books on Gestalt therapy, as well as several works – including the Copyrighted Manuscript –
that remained unpublished upon his death.

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations set forth in Paragraph 6 of Plaintiff's Complaint, and
therefore denies the same.**

7.      The Center for Gestalt Development is a nonprofit organization that has been
dedicated to publishing and distributing books, journals, and audio and video recordings
relating to Gestalt therapy since 1977, when the Center began publishing The Gestalt Journal
(now known as the International Gestalt Journal), the first professional journal devoted to the
discipline.

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations set forth in Paragraph 7 of Plaintiff's Complaint, and**

therefore denies the same.

8.    Today, the Center publishes and distributes dozens of books on Gestalt therapy, including many of Frederick Perls' seminal books, as well as significant works by Perls' late wife and collaborator, Laura Perls, Ph.D.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 8 of Plaintiff's Complaint, and therefore denies the same.**

9.    The Center is the owner of the registered copyright in the Copyrighted Manuscript, which consists of 63 typed pages, some with handwritten edits, addressing topics on the theory of Gestalt therapy.   It includes five chapters of a draft book entitled Psycho-pathology of Awareness, as well as an additional work consisting of a six-page fragment that begins with the sentence "Man is suspended in the zero-point of a meso-cosmos."

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 9 of Plaintiff's Complaint, and therefore denies the same.**

10.    Center obtained the copyright to the Copyrighted Manuscript through a 1991 Agreement with the estate of Laura Perls and through copyright assignments executed in accordance with that agreement by Frederick and Laura Perls' heirs.

**Answer: Dened.**

11.    Bowman and the French defendants are the creators, co-authors, editors, publishers, and promoters of a recently published book entitled *Psychopathology of Awareness: An unfinished and unpublished manuscript with commentaries by contemporary*

*gestalt – therapist* (the "Infringing Book"), a copy of which is attached as <u>Exhibit B.</u>

**Answer: Denied.**

12.     The Infringing Book contains a substantially verbatim copy of the entire Copyrighted Manuscript. (Ex. B 13-65).

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 12 of Plaintiff's Complaint, and therefore denies the same.**

13.     The Infringing Book's substantially verbatim of the Copyrighted Manuscript is preceded by a Foreword written by Bowman and Robine purporting to describe the Copyrighted Manuscript's provenance (Ex. B 7-10) and followed by a collection of essays by Bowman (Ex. B 57-64), Robine (Ex. B 187-197), and several other authors (Ex. B 65-186) that discuss (and further copy portions of) the Copyrighted Manuscript.

**Answer: Admitted that the book includes some content authored by Bowman; the remainder is denied.**

14.     Bowman and the French defendants announced publication of the Infringing Book in late 2019.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 14 of Plaintiff's Complaint, and therefore denies the same.**

15.     Within days of that announcement, the Center contacted Bowman and the French  defendants and advised them of the Center's exclusive publishing rights in the Copyrighted  Manuscript that Bowman and the French defendants' forthcoming book plainly infringed.   The  Center informed Bowman and the French defendants that they did not have

the Center's permission to use the Copyrighted Manuscript and repeatedly demanded that

Bowman and the  French defendants immediately cease and desist publication.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 15 of Plaintiff's Complaint, and therefore denies the same.**

16.    Bowman and the French defendants launched the Infringing Book anyway. Since late 2019, Bowman and the French defendants have disregarded the Center's demands and have continued publishing, promoting, advertising, offering for sale, selling, shipping, and profiting from the Infringing Book.   In doing so, Bowman and the French defendants are exploiting Frederick Perls' creative work in the Copyrighted Manuscript for their own financial gain while depriving both the Center and Perls' heirs of any benefit from the Copyrighted Manuscript, all in flagrant violation of the copyright laws.

**Answer: Defendant denies launching or exploiting anything or realizing any financial gain and is without sufficient information or knowledge regarding the truth or falsity of the remaining allegations set forth in Paragraph 16 of Plaintiff's Complaint, and therefore denies the same.**

## PARTIES

17.    Plaintiff, the Center for Gestalt Development, Inc., is a nonprofit corporation organized under New York law with its principal place of business as 290 Pond Road, Gouldsboro, Maine 04607-0460. The Center has been a leading publisher of works on the theory of Gestalt therapy for more than forty years and is the owner of exclusive rights to, and the registered copyright in, the Copyrighted Manuscript.

**Answer: Defendant is without sufficient information or knowledge regarding the**

truth or falsity of the allegations set forth in Paragraph 17 of Plaintiff's Complaint, and therefore denies the same.

      18.     Defendant Charles Bowman is a therapist residing in Indiana with a residence at 91 Point Lane, Arcadia, Indiana 46030.   Bowman is the owner and operator of Bowman Counseling & Consulting Services, Inc., which has offices in Indiana.  Bowman claims that he  obtained access to the Copyrighted Manuscript in 2014.   (Ex. B 57.)   Bowman shared the  Copyrighted Manuscript with the French defendants, Robine and L'Exprimerie, then worked  closely with Robine and L'Exprimerie to publish, promote, sell, profit from, and commercially  exploit the Copyrighted Manuscript through the Infringing Book.   The Infringing Book  identifies Bowman as its co-editor, a co-author of its Foreword, and the author of one of its chapters.   (Ex. B at Cover, 7-10, 57-64.) Bowman knew of the Center's exclusive rights in the Copyrighted Manuscript before publication of the Infringing Book.

**Answer: Admitted that Bowman has lived at the address in the first sentence. The second and third sentences are admitted and admitted that the book "identifies Bowman as its co-editor, a co-author of its Foreword, and the author of one of its chapters."  Defendant denies being a co-author of the Foreward and is without sufficient information or knowledge regarding the truth or falsity of the remaining allegations set forth in Paragraph 18 of Plaintiff's Complaint, and therefore denies the same.**

**THE FRENCH DEFENDANTS**

19.     Jean-Marie Robine is a therapist residing in France with a residence at 295 Route du Chemin Court, 33240 St. Romain La Virvee, France.   Robine is Manager and Chief Editor of  L'Exprimerie, a publisher and distributor of the Infringing Book.   Robine, who knew that  Bowman resided in Indiana, obtained a copy of the Copyrighted Manuscript from Bowman and  worked closely with Bowman and L'Exprimerie to publish, promote, sell, profit from, and   commercially exploit the Copyrighted Manuscript through the Infringing Book.   The Infringing   Book identifies Robine as its co-editor, a co-author of its Foreword, and the author of one of its  chapters.   (Ex. B at cover, 7-10, 187-197.)   Robine knew of the Center's exclusive rights in the   Copyrighted Manuscript before publication of the Infringing Book.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 19 of Plaintiff's Complaint, and therefore denies the same.**

20.     The Institut Français de Gestalt-thérapie ("L'Exprimerie") is an association organized under the laws of France with a principal place of business at 305 Route de Chemin Court, 33240 St. Romain La Virvee, France.   L'Exprimerie operates, as one of its departments, a  publishing business known as "L'Exprimerie."   Robine is L'Exprimerie's founder and Manager  and Chief Editor of its publishing department.   L'Exprimerie, which knew that Bowman resides   in Indiana, obtained a copy of the Copyrighted Manuscript through Bowman and Robine and has  worked closely with and through them to publish, promote, sell, profit from, and commercially   exploit the Copyrighted Manuscript through the Infringing Book.   L'Exprimerie knew of the   Center's exclusive rights in the Copyrighted

Manuscript before publication of the Infringing Book.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 20 of Plaintiff's Complaint, and therefore denies the same.**

### JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this civil action for violations of the copyright laws of the United States under 28 U.S.C. §§ 1331 and 1338(a).

**Answer: Admitted.**

22.     This Court has general personal jurisdiction over Bowman because he resides and is domiciled in this district. This Court also has specific personal jurisdiction over Bowman because a significant portion of Bowman's conduct that gives rise to the Center's copyright infringement claims took place in this district including:

a.     Keeping one or more copies of the Center's Copyrighted Manuscript in his office in Indiana, as Bowman admitted in an email to the Center dated December 1, 2019;

b.     Making unauthorized copies of the Copyrighted Manuscript and distributing those unauthorized copies from this district to the French defendants, to authors who contributed chapters of commentary for the Infringing Book, and to others;

c.     Communicating, agreeing, and working with the French defendants (who knew Bowman was in Indiana) to create, partially author, edit, publish, distribute, sell, and promote the Infringing book; and

d.     Causing the Infringing Book to be made available for sale in Indiana, and, on information and belief, to be purchased by and shipped to residents in this judicial district.

**Answer: Defendant admits having residing and being domiciled in this district, but denies the remaining allegations set forth in Paragraph 22 of Plaintiff's Complaint, and therefore denies the same.**

23.     In November 2019, Bowman and Robine authored and sent electronic messages to members of the Association for the Advancement of Gestalt Therapy (the "AAGT") residing within this district announcing and promoting the Infringing Book, inviting those residents to purchase the Infringing Book from L'Exprimerie through a commercial website that Bowman  and the French defendants caused to be created, and which is, upon information and belief,  maintained by the French defendants, attaching an advertisement for the Infringing Book that Bowman and Robine created for L'Exprimerie.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 23 of Plaintiff's Complaint, and therefore denies the same.**

24.     Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred and are occurring here, including Defendants' offering for sale, delivery, and commercial exploitation of the Infringing Book within this District.

**Answer: Denied.**

## FACTUAL BACKGROUND

25.     Frederick Perls was born in Germany and trained as physician and psychiatrist in Europe before fleeing Nazi Germany and eventually arriving in the United Sates, where he became a prominent and influential psychotherapist and author, especially in the discipline he created and polarized, Gestalt therapy.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 25 of Plaintiff's Complaint, and therefore denies the same.**

26.     Perls authored the Copyright Manuscript in the early 1960s but never published it before his death in 1970.  At the time of his death, Perls owned all rights in the Copyrighted Manuscript.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations set forth in Paragraph 26 of Plaintiff's Complaint, and therefore denies the same.**

27.     After his death in 1970, Frederick Perls' rights and Copyrighted Manuscript passed to his wife and longtime collaborator, Laura Perls, Ph.D., and ultimately, to her estate. Laura Perls' estate registered the Copyrighted Manuscript with the United States Copyright Office on February 8, 1992 under Registration No. TXu 463-603. (See Ex. A.)

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

28.     The Center was founded in 1977 with the mission of publishing and distributing books, journals, and educational recordings relating to the theory and practice of Gestalt therapy.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

29.     For more than forty years, the Center has served as an important publisher and distributor of Gestalt therapy resources, including the first journal dedicated exclusively to Gestalt therapy, as well as many significant books in that field.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

30.     During the 1980s and 1990s, the Center and its affiliate, the Gestalt Journal Press, entered into a series of contracts with the estates of Frederick Perls and Laura Perls that granted  the Center certain exclusive publishing rights (as well as rights to receive copyright assignments  upon demand) to several published and unpublished works by Frederick and Laura Perls in  exchange for royalties on any sales of those works payable to the estates of their heirs.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

31.     On May 13, 1991, the Center entered into one such agreement with the estate of  Laura Perls (the "1991 Agreement"), under which the estate granted the Center exclusive publishing rights to several unpublished works by Frederick Perls, including those contained in  the Copyrighted Manuscript.   In accordance with that agreement, the Perls' only heirs, Stephen  and Renate Perls, have assigned ownership of all copyrights in the Copyrighted Manuscript to  the Center.   Copies of these assignments, along with the 1991 Agreement and supporting  documents showing the authority of the signatories, are attached as <u>Exhibit C.</u>

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

32.     The exclusive rights granted to the Center under the 1991 Agreement have never reverted, and the Center has never failed or refused to comply with a publication demand under that agreement.

**Answer: Defendant is without sufficient information or knowledge regarding the**

**truth or falsity of the allegations and therefore denies the same.**

33.     While the Copyrighted Manuscript remained unpublished, the Center made it available for review and study by researchers in the Gestalt therapy field through the Gestalt Therapy Archive (the "Gestalt Archive").

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

34.     The Gestalt Archive was created by the Center's founder, Joseph Wysong, in about 1985 and is the world's largest collection of published and unpublished materials relating to the history and development of Gestalt therapy.   The archive was originally housed at Kent  State University. Since 2009, it has been housed at the University of California, Santa Barbara.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

35.     The Gestalt Archive makes its resources available to researchers in the Gestalt therapy field for in-person review and study. Visitors to the archive may not remove or borrow any of its materials or copy any copyrighted works in its collection.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

36.     For many years, indexes and inventories of the Gestalt Archive's collection, including the indexes and inventories made available to all visitors to the Archive, have listed the  Copyrighted Manuscript by name and have identified the Copyrighted Manuscript as an unpublished manuscript by Frederick Perls that is subject to copyright.

**Answer: Defendant is without sufficient information or knowledge regarding the**

truth or falsity of the allegations and therefore denies the same.

     37.    Charles Bowman is a private therapist and consultant in Indiana who markets himself as a leading expert in Gestalt therapy.

**Answer: Admitted that Defendant has been a therapist that utilizes Gestalt therapy. The remaining allegations are denied.**

     38.    Bowman has visited the Gestalt Archives and studied the materials in its collection.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

     39.    Sometime in the 2010s, Bowman obtained access to the Copyrighted Manuscript.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

     40.    Bowman has claimed that he obtained the Copyrighted Manuscript while attending a Gestalt therapy conference in California in 2014. (Ex. B. 57.)

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

     41.    On information and belief, the version Bowman obtained was removed or copied  from the Gestalt Archive—something the Center never granted anyone permission to do.

**Answer: Denied.**

     42.    Bowman sent a copy of the Copyrighted Manuscript to Robine, a therapist who also markets himself as a leading expert in Gestalt therapy, and who serves as manager and

chief  editor of L'Exprimerie, a publisher.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

43.    Bowman, Robine, and L'Exprimerie decided and agreed to commercially exploit  the Copyrighted Manuscript by creating, publishing, promoting, selling, and profiting from the   Infringing Book.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

44.    The version of the Copyrighted Manuscript that appears in the Infringing Book is substantially identical to the original.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

45.    The similarities between the Copyrighted Manuscript and the version reproduced  in the Infringing Book are striking.   A table illustrating this by listing the first few words of each  paragraph in the Copyrighted Manuscript and the Infringing Work side-by-side is attached as Exhibit D.

**Answer: Denied.**

46.    Apart from correcting a few typographical errors, Bowman and the French defendants made only the following changes to the Copyrighted Manuscript before publishing it in the Infringing Book:

a.    Several pages of the Copyrighted Manuscript contain minor handwritten edits. Bowman and the French defendants incorporated those into text.

b.      The Copyrighted Manuscript contains the first five chapters of a draft book, followed by an untitled six-page fragment, identifying it as "Chapter Five."

c.      The six-page fragment contains 16 paragraphs.  Bowman and the French defendants changed the order (but not the text) of the penultimate 5 paragraphs. (*See* Ex. D at 6, ¶¶ 10-15.)

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

47.      None of the changes to the Copyrighted Manuscript are transformative, none add any new elements or meanings, and none reflect any significant creative work by Defendants.

**Answer: Denied.**

48.      Bowman and the French defendants never contacted the Center before undertaking work on the Infringing Book to request permission to use the Copyrighted Work, and Bowman and the French defendants never received the Center's permission.

**Answer: Denied.**

49.      Upon information and belief, Bowman and the French defendants purposefully concealed their possession of the Copyrighted Manuscript, and their scheme to publish it, to prevent the Center from discovering Bowman's and the French defendants' infringement until after, or just before, publication of the Infringing Book.

**Answer: Denied.**

50.      Bowman and the French defendants first publicly announced the Infringing Book  in or about November 2019, only a few weeks before Defendants published and began selling it in December.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

51.     Bowman and the French defendants have been actively advertising and promoting the book since in or about November 2019.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

52.     For example, on November 10, 2019, Bowman sent an e-mail message on behalf of himself and Robine and an accompanying advertisement to members of the Association for the Advancement of Gestalt Therapy (the "AAGT"), including members residing in this judicial district, in which Bowman and Robine announced the forthcoming release of their Infringing Book.  The message specifically encouraged recipients to purchase the Infringing Book from a L'Exprimerie website and asked them to send copies of the advertisements to their friends.  A copy of this message, which was also posted on the AAGT's online message board, and the accompanying advertisement are attached at Exhibit E.

**Answer: Admitted that Bowman authored the email in Exhibit E, which speaks for itself.  The remaining allegations set forth in Paragraph 52 of Plaintiff's Complaint, are denied.**

53.     Bowman's and the French defendants' advertising and marketing of the Infringing Book trumpet its inclusion of the previously unpublished Copyrighted Manuscript as the Infringing Book's primary selling point.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

54.     In both their advertising and the Infringing Book itself, Bowman and the

French defendants salaciously mischaracterize the Copyrighted Manuscript as a "lost" text

that Bowman and the French defendants have finally brought to light.  For example,

Bowman and Robine have written:

> Certainly, there had always been the rumor of the existence of an
> unfinished manuscript penned by Fritz Perls, the primary founder
> of Gestalt Therapy.  For some of us, this rumor was a little more
> specific since this text even had a title: 'Psychopathology of
> Awareness'.  But none knew where to find it – or necessary to
> overcome multiple hesitations and mobilize some authors to
> comment on this relativity brief and sometimes chaotic draft.

(Ex. B at back cover; Ex. E at advertisement.)

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations and therefore denies the same.**

55.     This is, of course, nonsense.  The Copyrighted Manuscript has for many years

been available to researchers at the Gestalt Archive, which lists it by name in indexes and

inventories of the Archive's collection.

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations and therefore denies the same.**

56.     Promptly upon learning of Bowman's and the French defendants'

announcement,  the Center contacted Bowman and the French defendants, on or about

November 25, 2019, and  explained that the Center owned exclusive publication rights to the

Copyrighted Manuscript that  it obtained from the estate of Laura Perls.   The Center

informed Bowman and the French  defendants that they were unambiguously infringing the

Center's exclusive rights by preparing to publish that Copyrighted Manuscript and demanded

that Bowman and the French defendants  immediately cease and desist publication.

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations and therefore denies the same.**

57.    In response, Bowman and Robine confirmed that they were in possession of

the  Copyrighted Manuscript and initially asked whether the Center would grant Bowman and

the  French defendants permission to proceed with publication, even offering to pay the

Center a  royalty.   The Center refused to grant permission, but Bowman and the French

defendants  brazenly proceeded to publish and distribute the Infringing Book without the

Center's  permission.   Bowman and the French defendants have since disregarded many more

demands  by the Center that they cease and desist.

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations and therefore denies the same.**

58.    In or about December 2019, Bowman and the French defendants began

publishing  the Infringing Book and offering it for sale through a commercial website

controlled and maintained by Bowman and the French defendants.

**Answer: Defendant is without sufficient information or knowledge regarding the
truth or falsity of the allegations and therefore denies the same.**

59.    Between 2020 and 2022, Bowman and the French defendants accepted and

filled  orders for the Infringing Book, receiving money from purchasers in exchange for

shipping copies  of the Infringing Book to customers, including accepting payment from and

shipping the  Infringing Book to several customers residing in this judicial district.

**Answer: Denied the Bowman ever accepted or filled orders for the book. Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

60.     Undeterred by the Center's repeated demands, and evidently determined to continue profiting from Frederick Perls' fame and the Center's intellectual property, Bowman and the French defendants continue to advertise, promote, publish, and sell copies of the Infringing Book, as well as a recently released, and similarly infringing, French translation.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

61.     The benefits Bowman and the French defendants have received from their infringing conduct are not limited to proceeds from sales of the Infringing Book.

**Answer: Denied.**

62.     The Infringing Book includes, before and after its reproduction of the Copyrighted Manuscript, marketing copy promoting Bowman and the French defendants themselves.   (*See, e.g.*, Ex. B at PDF pp. 4 and book pages 9, 10, 64, 195.)   The Infringing Book also contains repeated suggestions falsely claiming that Bowman and the French defendants have somehow "rescued" the Copyrighted Manuscript.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

63.     Bowman and the French defendants have also promoted both the Infringing Book  and their connection with it in many other forums, including in interviews published by Gestalt  therapy associations, in online biographical materials hosted by various third parties,

and on  Bowman's and the French defendants' own websites.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

64.     Bowman's and the French defendants' promotional efforts plainly are intended not only to sell the Infringing Book, but also to use Frederick Perls' well-deserved fame and influence to raise Bowman's and the French defendants' esteem in the eyes of the Gestalt therapy  community—and in the eyes of potential customers for Bowman's and Robine's therapy and consulting services and potential authors of and customers for L'Exprimerie's publications—by suggesting a connection between Bowman and the French Defendants, on the one hand, Robine and Frederick Perls on the other.

**Answer: Denied.**

65.     No such connection exists.   The heirs and estates of Frederick and Laura Perls did not entrust Bowman or the French defendants with any rights to the Copyrighted Manuscript.   They entrusted those rights to the Center.   Bowman and the French defendants are liable for disregarding and willfully infringing those rights.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

## CLAIMS FOR
## RELIEF

### COUNT ONE
### Copyright Infringement

66.    The Center incorporates each paragraph above as if fully set forth here.

**Answer: No response required.**

67.    The Center owns exclusive rights and registered copyrights to the Copyrighted Manuscript, copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq*.

**Answer: Denied**

68.    The Infringing Book contains a substantially verbatim copy of the Copyrighted Manuscript.

**Answer: Denied.**

69.    Without the Center's consent, authorization, approval, or license, Bowman and the French defendants knowingly, willingly, and unlawfully copied, distributed, and displayed the Center's Copyrighted Manuscript, and portions of it.

**Answer: Denied.**

70.    Without the Center's consent, authorization, approval, or license, Bowman and the French defendants knowingly, willingly, and unlawfully copied, prepared, published, displayed, and distributed the Infringing Book (which contained the Copyrighted Manuscript, and portions of it), and continues to do so.

**Answer: Denied.**

71.    Without the Center's consent, authorization, approval, or license, Bowman caused  Robine and L'Exprimerie to knowingly, willingly, and unlawfully create a derivative

work from  the Copyrighted Manuscript in the form of a French translation of the Infringing

Book and copy,  prepare, publish, display, and distribute that translation (which contains a

derivative work of  Copyrighted Manuscript, and portions of it). Robine and L'Exprimerie

continue to do so.

      **Answer: Denied.**

      72.     Bowman's and the French defendants' infringement is, and has been, knowing

and willful under the Copyright Act, and the award of statutory damages should be enhanced

in  accordance with 17 U.S.C. § 504(c)(2).

      **Answer: Denied.**

      73.     By this unlawful copying, use, creation of an unauthorized derivative work,

and  distribution, Bowman and the French defendants have violated the Center's exclusive

rights  under 17 U.S.C. § 106.

      **Answer: Denied.**

      74.     Bowman and the French defendants have realized unjust profits, gains, and

advantages as a proximate result of their infringement.

      **Answer: Denied.**

      75.     As a direct and proximate result of Bowman's and the French defendants'

willful copyright infringement, the Center has and continues to suffer actual damages.

      **Answer: Denied.**

      76.     The Center is entitled under 17 U.S.C. § 504 to recover either its actual

damages  together with Bowman's and the French defendants' profits attributable to the

infringement, or, at the Center's election, statutory damages of up to $150,000 for each

copyrighted work  infringed, as well as the Center's reasonable attorneys' fees and costs, and

injunctive relief  barring Bowman and the French defendants from further infringement of the copyrighted works.

**Answer: Denied.**

**Count Two**
**Contributory Copyright Infringement**

77.     The Center incorporates each paragraph above as if fully set forth here.

**Answer: Defendant incorporates its preceding answers.**

78.     L'Exprimerie and other third parties have directly infringed and are directly infringing the Center's copyrights by copying, reproducing, distributing, displaying, and selling, and distributing the Copyrighted Manuscript to the public via the L'Exprimerie website and  other online sellers such as Amazon in violation of the Center's exclusive rights and copyrights,  and in violation of the Copyright Act, 17 U.S.C.§ 501.

**Answer: Denied.**

79.     In addition to or in the alternative to his own direct infringement, Bowman, like  Robine is liable as a contributory infringer for L'Exprimerie's direct infringement.

**Answer: Denied.**

80.     Bowman, like Robine, knew that the infringement has occurred and is continuing  to occur and yet he caused, enabled, facilitated, and materially contributed to that infringement.

**Answer: Denied.**

81.     Bowman, caused, enabled, facilitated, and materially contributed to that infringement by obtaining the Copyrighted Manuscript without the Center's permission, by copying, distributing, and displaying the Copyrighted Manuscript to the French defendants, by encouraging the French defendants to publish the Infringing Book, by authoring and co-

authoring portions of the Infringing Book, by soliciting other authors to provide materials that appear in the Infringing Book, by working with the French defendants in creating, editing, pricing, and preparing the Infringing Book for publication, and by assisting the French defendants in the publishing, promoting, advertising, and selling the Infringing Book.

**Answer: Denied.**

82.     Bowman's knowledge of the infringement, like Robine's is both actual and constructive.

**Answer: Denied.**

83.     Bowman knew that the Copyrighted Manuscript was copyrighted and that the Center (or its founder Joseph Wysong) had exclusive rights to the Copyright Manuscript. Among other things, Bowman has visited and studied the Gestalt Archives, which plainly identify the Copyrighted Manuscript as copyrighted material, and Robine has stated in emails even before publication of the Infringing Book that he believed or suspected that he needed permission of the Cetner's founder, Joseph Wysong, to proceed with publication of the Infringing Book Bowman has also stated in an e-mail that he was in full agreement with Robine's understanding about rights in the Copyrighted Manuscript.

**Answer: Denied.**

84.     Bowman, like Robine, obviously knew of the publication, distribution, sale, and  display of the Infringing Book.   Indeed, Bowman and Robine both have widely and publicly  sections of the Infringing Book.   Bowman has promoted sales of the Infringing Book in multiple  forums, including on one or more publicly available resumes and biographical information, on his website, and in mass emails sent to Gestalt therapy professional associations.   Robine has  similarly promoted the Infringing Book and his

involvement in creating it, including, for  example, interviews published by such associations.

**Answer: Denied.**

85.    Bowman, like Robine, has continued assisting in the directly infringing activity even after the Center expressly alerted him that it owned an exclusive right in the Copyrighted Manuscript that appears verbatim in the Infringing Book.

**Answer: Denied.**

86.    Bowman's contributory infringement, like Robine's is and has been willful, intentional, purposeful, and reckless, in complete disregard of the Center's rights, and has substantially damaged the Center.

**Answer: Denied.**

87.    Each violation of the Center's rights in and to the Copyrighted Manuscript constitutes a separate and distinct act of copyright infringement.

**Answer: Denied.**

**Count Three
Vicarious Copyright Infringement**

88.    The Center incorporates each paragraph above as if fully set forth here.

**Answer: Defendant incorporates its preceding answers.**

89.    The creation, publication, and sale of the Infringing Book directly infringes the Center's exclusive rights and copyrights in the Copyrighted Manuscript.

**Answer: Denied.**

90.    A defendant commits vicarious copyright infringement when the defendant has the right and ability to supervise the infringing activity and also has a direct financial interest

in   such activities.   A direct financial interest may, but need not, include payment of proceeds

from   sales of infringing material.   A direct financial interest exists where the availability of

infringing   material acts as a draw for customers. There is no requirement that this draw be

substantial.

>**Answer: Denied.**

91.      Bowman is co-editor of the Infringing Book.   Bowman is also engaged in

business as a private Gestalt therapist and consultant as well as a provider of training services

for other Gestalt therapists.

>**Answer: Admitted that Bowman has been a Gestalt therapist, the remainder is**
>
>**Denied.**

92.      As co-editor of the Infringing Book, Bowman had authority to supervise the

directly infringing activities.  As co-editor, Bowman could have, for example, caused the

Infringing Book's verbatim copy of the Copyrighted Manuscript to be removed.

>**Answer: Denied.**

93.      Bowman has a direct financial interest in the publication, sale, and promotion

of  the Infringing Book.

>**Answer: Denied.**


94.      Among other things, the existence of the Infringing Book acts as a draw for

customers for Bowman.   The Infringing Book contains marketing copy trumpeting

Bowman's  expertise and experience as a Gestalt therapist.   Bowman has also used his

association with the  Infringing Book, and with the works of Frederick Perls that the

Infringing Book contains, both to  market his services directly to potential customers and to

raise his esteem among colleagues in  the Gestalt therapy community who may refer Bowman customers for therapy and training  services.

**Answer: Denied.**

95.    Robine is co-editor of the Infringing Book and Manager and Chief Editor of L'Exprimerie's publishing operations.   Like Bowman, Robine is also engaged in business as a  private Gestalt therapist, as a provider of training services for other Gestalt therapists, and as an  author of Gestalt therapy books and articles.

**Answer: Denied.**

96.    By virtue of his position as co-editor of the Infringing Book and Manager and Chief Editor of L'Exprimerie, Robine had authority to supervise the creation, publication, promotion, and sale of the Infringing Book.  As co-editor of the Infringing Book (with Bowman) and Chief Editor and Manager of L'Exprimerie, Robine could have, for example, caused the Infringing Book's verbatim copy of the Copyrighted Manuscript to be removed.

**Answer: Denied.**.

97.    Robine like Bowman, has a direct financial interest in the publication, promotion, and sale of the Infringing Book.

**Answer: Denied.**

98.    Among other things, Robine has a direct financial interest because he is employed  by L'Exprimerie, which receives revenue for sale of the Infringing Book.   Robine is also the  founder and Manager of L'Exprimerie, with control over its use of funds, and in that capacity too  has a financial interest in the infringing activities.

**Answer: Denied.**

99.    Robine, like Bowman, also has a direct financial interest in the publication,

promotion, and sale of the Infringing Book because the existence of the Infringing Book acts

as a draw for customers for Robine's services.

**Answer: Denied.**

100.    Among other things, the Infringing Book contains marketing copy promoting

Robine's and Bowman's respective expertise and experience as Gestalt therapists, as trainers

of other therapists, and as authors of Gestalt therapy books and publications, several of

which are advertised in the Infringing Book.

**Answer: Denied.**

101.    Robine has also used his association with the Infringing Book, and with the

works of Frederick Perls the Infringing Book contains, both to the market his services

directly to potential customers and to raise his esteem among colleagues in the Gestalt

therapy community who may refer Robine customers for therapy and training services, and

who may also buy his books or  select his current or future writings for publication.

**Answer: Denied.**

102.    L'Exprimerie employs Robine and operates as a department the publishing

business known as "L'Exprimerie."

**Answer: Defendant is without sufficient information or knowledge regarding the**

**truth or falsity of the allegations and therefore denies the same.**

103.    As Robine's employer and operator of the publishing business, L'Exprimerie

has supervisory authority over Robine's infringing activities, as well as over Bowman's

infringing   activities insofar as they occurred as part of Bowman's work as co-editor of one

of  L'Exprimerie's publications.

**Answer: Defendant is without sufficient information or knowledge regarding the**

**truth or falsity of the allegations and therefore denies the same.**

104.    L'Exprimerie has a direct financial interest in the sale and promotion of the Infringing Book because it directly receives payments from sales of the Infringing Book and because the existence of the Infringing Book (which includes advertisements for other L'Exprimerie books), acts as a draw for customers for L'Exprimerie.

**Answer: Defendant is without sufficient information or knowledge regarding the truth or falsity of the allegations and therefore denies the same.**

105.    Upon information and belief, Bowman and the French defendants have each profited from the direct infringement.   And have each failed to exercise their authority to stop or limit it.

**Answer: Denied.**

106.    Bowman's and the French defendants' vicarious infringement is and has been willful, intentional, purposeful and reckless, in complete disregard of the Center's exclusive rights, and has caused and is causing substantial damage to the Center.

**Answer: Denied.**

107.    Each violation of the Center's rights in and to the Copyrighted Manuscript constitutes a separate and distinct act of copyright infringement.

**Answer: Denied.**

## Defendant's Affirmative Defenses

Defendant, asserts:

1.  The Compliant fails to join an indispensable party, namely, one or more of the owners of the copyrights to the Copyrighted Manuscript at the time the alleged infringement occurred.

2.  Plaintiff's claims are barred for failure to join an indispensable party, namely, the parties to the 1991 license agreement who retained some of their rights.

3.  Defendant is a valid licensee of the asserted supposed Copyrighted Manuscript.

4.  Plaintiff has failed to mitigate any of the damages it allegedly suffered.

5.  Plaintiff's claims are barred by the statute of limitations.

6.  Plaintiff's claims are barred by the doctrine of laches due to the lapse of time between Plaintiff's awareness of the alleged infringing act by Defendant and the initiation of the present action.

7.  Plaintiff's supposed Copyrighted Manuscript is invalid as Plaintiff has failed to comply with one or more of relevant requirements of registration.

8.  The Center for Gestalt Development is not the valid or current owner of the supposed Copyrighted Manuscript, either now or at the time of the alleged infringements.

9.  At the time of the act alleged to constitute infringement, copyright Registration No. TXu 463-603 had expired.

10. The alleged use of the supposed Copyrighted Manuscript by Defendant was a fair use.

11. Plaintiff is estopped from bringing the present cause of action against Defendant.

12. Plaintiff cannot show any actual damages, and further is not entitled to any statutory damages.

13. If there was any use of Plaintiff's works by Defendant, such use was de minimus.

14. The Complaint fails to state a claim.

15. Plaintiff's claims are limited and/or barred because some or all of the Copyrighted Manuscript is in the public domain.

16. Plaintiff's claims are limited and/or barred because the Copyrighted Manuscript was published without a copyright notice.

17. Plaintiff's claims are barred based upon the doctrine of estoppel.

18. Plaintiff's claims are barred based upon the doctrine of acquiescence.

19. Plaintiff's claims are barred based upon the doctrine of waiver.

20. Plaintiff's claims are barred based upon the doctrine of abandonment.

21. Plaintiff's claims are barred based upon the doctrine of release.

22. Plaintiff's claims are barred based upon the doctrine of copyright misuse.

23. Plaintiff's claims are barred due to the existence of implied licenses in the supposed Copyrighted Manuscript.

24. Plaintiff lacks standing, is not the real party in interest, does not own some or all of the copyrights at issue, was not validly assigned some or all of the copyrights at issue, and/or has forfeited its rights in some or all of the copyrights at issue.

WHEREFORE, Defendant, by counsel, respectfully request that the Court enter judgment in favor of Defendant, that Plaintiff take nothing, that Defendant be awarded attorneys' fees and costs in relation to this action, and for all other relief just and proper in the premises.

**Defendant demands a jury trial.**

Respectfully submitted,

**Overhauser Law Offices LLC**

By: <u>s/Paul B. Overhauser</u>
Paul B. Overhauser
18 E. Main Street, Suite 202
Greenfield, IN  46140
P: 317-467-9100
poverhauser@overhauser.com
*Attorney for Defendant, Charles Bowman*