UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE CENTER FOR GESTALT DEVELOPMENT, INC., Plaintiff, | ) | |
| v. | ) | No. 1:22-cv-02185-RLY-CSW |
| CHARLES BOWMAN, JEAN-MARIE ROBINE, and INSTITUT FRANCAIS DE GESTALT-THERAPIE, Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, the Center for Gestalt Development, is a non-profit organization based in Maine dedicated to the education and development of gestalt therapy, a form of psychotherapy emphasizing holistic self-awareness. More importantly for purposes of this case, the Center has an exclusive license to publish a volume of certain unpublished copyrighted works on gestalt therapy. Defendants Charles Bowman, an Indiana resident, and Jean-Marie Robine, a French resident, practice gestalt therapy. In 1980, Robine founded Defendant Institut Francais de Gestalt-Therapie. The Institut has a publishing department called l'Exprimerie, which has published nearly 50 books on gestalt therapy.

In the present action, the Center alleges Bowman, Robine, and the Institut have infringed its copyright in a manuscript relating to gestalt therapy titled the Psychopathology of Awareness. Bowman and Robine (or "Defendants") now move for

summary judgment against the Center. For the reasons explained below, the court **GRANTS** their motions.

## I. Factual Background

### A. The Perls

Frederick Perls (1896-1970) was a psychiatrist and psychotherapist who is widely recognized as the founder of gestalt therapy, an influential form of psychotherapy that he developed in the 1940s. (Filing No. 127-1, Bowman Decl. ¶ 2; *see also* Filing No. 1, Compl. ¶ 5). Dr. Perls authored many works on gestalt therapy, some of which remained unpublished upon his death. (Bowman Decl. ¶ 2). Dr. Perls was married to Laura Perls, and together they had two children, Stephen Perls and Renate Perls. (*Id.* ¶¶ 5–6).

After Dr. Perls' death in 1970, Laura Perls inherited the copyrights to his written works. (*Id.* ¶ 5). On May 13, 1991, following her death, the Estate of Laura Perls granted the Center an exclusive license to publish the Psychopathology of Awareness. (*Id.* ¶ 5; Filing No. 1-3, License at ECF p. 8). The License Agreement provides, in relevant part:

> The [Estate] gives and grants to [the Center] the sole and exclusive rights to publish the English language version of the Psychopathology of Awareness, a collection of the unpublished works of Frederick Perls, for and during the time for which the copyright or any renewals thereof shall be or remain in force. The volume will include the following manuscripts: "The Psychopathology of Awareness," "Psychiatry in New Key," "The Self (A Cooper Union Lecture)," "Planned Psychotherapy," an untitled book chapter beginning with "Before we go on with a more detailed . . ." and an untitled manuscript that begins "What are 'we' doing to our 'selves'?"

(License Ag. at ECF p. 8). In turn,

> The [Center] agrees . . . [t]o publish the work at its own expense, and to make it available for distribution through normal retail outlets no later than twelve months after accepting the manuscript. If [the Center] fails to do so, [the Estate] may demand in writing that it be done within thirty (30) days. If [the Center] fails to comply, [the Estate] may immediately terminate this agreement and all rights granted hereunder shall revert to [the Estate].

(*Id.* at ECF pp. 8–9). On January 30, 1995, the Estate assigned all rights, title, and interest in the copyrights to Stephen Perls (50%) and Renate Perls (50%). (Filing No. 1-3, 1995 Assignment at ECF p. 7).

### B. The Manuscript

Bowman is a well-known gestalt therapist who practices in Indiana. (Bowman Decl. ¶ 8; Compl. ¶ 18). He has taught gestalt therapy at Indiana University, Purdue University, and other institutions of higher learning. (Bowman Decl. ¶ 8). He is also an avid member of the International Association for the Advancement of Gestalt Therapy ("IAAGT"). (*Id.* ¶ 9). In the mid-2010s, Bowman and his wife attended an annual IAAGT meeting that included a charity auction. (*Id.*). One item offered at the auction was a copy of an unpublished manuscript of Dr. Perls titled Psychopathology of Awareness (the "Manuscript"). (*Id.*). Bowman's wife purchased the Manuscript as a birthday gift to Bowman. (*Id.*).

In October 2017, Bowman informed Robine that he had a copy of the Manuscript. (Filing No. 137-3, Oct. 2017 to Apr. 2019 Email Chain at ECF p. 3). Robine was anxious to publish it because he thought it would be of interest to the gestalt community. (*Id.* at ECF p. 2). Bowman informed Robine that he was "working out details of publishing rights" and was not sure what they could and could not do. (*Id.*).

In the fall of 2018, Robine reached out to the Center's president, Joe Wysong, to find out who owned the copyright to the Manuscript. (Filing No. 137-1, Afterward to Psychopathology of Awareness ("Afterward") at ECF p. 4; Oct. 2017 to Apr. 2019 Email Chain at ECF p. 5). Robine received no response from Wysong. (Oct. 2017 to Apr. 2019 Email Chain at ECF p. 5). Robine assumed it was not of concern to Wysong because "if it were, he would have included it in the book of Perls' essays and articles." (*Id.*). Several months later, in February 2019, Robine learned from Wysong's wife, Molly Rawle, that Wysong had died in May 2018. (*Id.* at ECF p. 9; Filing No. 138-2, Rawle Dep. at 9; Filing No. 137-2, Robine Dep. at 81).

Around the time Robine learned of Wysong's death, Robine and Bowman decided to publish the Manuscript at the Institut in France, with the two acting as co-editors. (Oct. 2017 to Apr. 2019 Email Chain at ECF pp. 20–21; Bowman Decl. ¶ 10; Filing No. 130-5, Robine Decl. ¶ 7). Because the Manuscript was not long enough to qualify as a book by modern standards, the Institut asked Bowman and other gestalt academics from around the world to contribute chapters commenting on the Manuscript (the "Book").[1] (Bowman Decl. ¶ 11; Robine Decl. ¶¶ 6–7; Filing No. 1-5, Book Announcement to IAAGT Colleagues at ECF pp. 2–3). In addition to Bowman and Robine, nine gestalt therapists and academics from the United States, Western Europe, Mexico, and Russia contributed to the Book. (Book Announcement at ECF pp. 3–4). None of the

[1] The Manuscript at issue, the Center's exclusive rights in the volume of unpublished works, and the accused Book published by Defendants share the same title: the Psychopathology of Awareness.

contributors, including Bowman and Robine, were paid for their contributions to the Book. (Bowman Decl. ¶ 11).

An English version of the Book was printed in December 2019, with sales starting in February or March 2020 on the l'Exprimerie website. (Book Announcement at ECF pp. 3–4; Bowman Decl. ¶ 14; Robine Decl. ¶ 10). The Book cost €25—a rate set by French law. (Robine Decl. ¶ 9).

**C. Events Surrounding the Book's Publication**

Right before the Book was printed, Molly Rawle, who succeeded her husband as president of the Center, (Rawle Dep. at 6), contacted Robine and informed him that publication of the Book constituted copyright infringement per the 1991 License Agreement, (Afterward at ECF p. 4). Rawle demanded "withdrawal of the publication." (*Id.* at 5). Robine offered to include the Center as a collaborator on the Book and to pay the Center 20% of any royalties. (*Id.* at 6). Rawle rejected Robine's offer. (*Id.*). The Center's attorney also threatened Bowman, Stephen Perls, and Renate Perls with litigation. (Filing No. 127-5, Gold Dec. ¶ 16; Bowman Dec. ¶ 18).

Around April 2020, Robine, recognizing that the Center never published the Psychopathology of Awareness as required by the 1991 License Agreement, decided to obtain the approval of the Perls' heirs. (Filing No. 137-5, Apr. 2020 Email Chain at ECF p. 2). He then contacted Leslie Gold,[2] who is the Attorney-in-Fact and daughter of

[2] In her declaration, Gold states she spoke with Robine in 2019 about the possibility of the Institut publishing the Book and gave her permission after speaking with Stephen Perls. (Gold Decl. ¶¶ 8, 11–12). But in an email dated April 11, 2020, between Robine and Nancy Amendt-Lyone (who apparently was in contact with the Perls), Robine asks whether she would contact

Renate Perls. (Gold Decl. ¶ 7). After consulting with Stephen Perls, Gold gave Robine and the Institut permission to publish the Book because she had been "advised by trusted members of the Gestalt Therapy community that the Manuscript had not been published, and that Charles Bowman and Jean-Marie Robine were unsuccessful in many attempts to contact The Center of Gestalt Development, Inc. to discuss publishing it." (*Id.* ¶¶ 11–12). She "did not place any limitations on this license." (*Id.* ¶ 8).

The Institut paid Gold royalty payments from sales of the Book in the following amounts: €119.45 for 2020, €25.59 for 2021, and €14.22 for 2022. (*Id.* ¶ 14; Robine Decl. ¶ 12). Bowman testified that "[r]oyalties were to be paid annually by April for sales booked in the prior calendar year." (Bowman Decl. ¶ 12).

**D. The Copyright Assignments**

On December 30, 2020, the Center filed a Complaint against Stephen and Renate Perls over publication of the Book in the Supreme Court of New York. (Filing No. 127-6, Letter Agreement at ECF p. 2; Filing No. 130-7, Feb. 21, 2021, Email; Gold Decl. ¶ 16 (testifying that the Center's lawyer "threatened to sue my mother . . . and my uncle . . . unless each signed a copyright assignment")). In January and February 2021, Stephen Perls and Renate Perls, by Gold as her Attorney-in-Fact, entered into letter agreements with the Center, whereby they granted copyright assignments for "the book/work titled Psychopathology of Awareness, Copyright Office registration no. TXu000463603" in

---

the Perls' heirs and ask for their authorization to publish the Book. (Apr. 2020 Email Chain at ECF p. 2). She responded the following day stating that she had spoken with Gold and that Gold "wants to support you in getting her grandfather's writing published." (*Id.* at ECF p. 1).

exchange for dismissal of the complaint filed against them. (Letter Agreement at 2–3; Filing No. 1-3, Copyright Assignments dated January 31, 2021 (Stephen Perls) and February 10, 2021 (Gold on behalf of Renate Perls) at ECF pp. 2–3). To be clear, the assignments cover only the Manuscript. (*See* Filing No. 1-1, Copyright for Psychopathology of Awareness (the Manuscript) at ECF p. 2 (Copyright Office registration no. TXu000463603)). Moreover, the copyright assignment is temporary and expires upon resolution of the present dispute. (Letter Agreement at ECF p. 1 ("Upon resolution of the dispute between [the Center] and the Infringers (including after a final judgment and exhaustion of all appeals in a court case, or after an extended period of inactivity without in-court litigation), the Assignment will expire" and revert to the Perls' heirs); Rawle Dep. at 35–36 (testifying that the temporary rights the Center has in the Manuscript "end[] when this lawsuit ends").

**E. Publication of the Manuscript**

In September 2021, the Perls' heirs asked the Center to publish the Psychopathology of Awareness. (Rawle Dep. at 106). The Gestalt Journal Press published the work, comprised of six manuscripts, on Amazon.com within thirty days of their request. (*Id.* at 105, 107; Filing No. 138-3, Amazon.com Listing; Filing No. 142, The Psychopathology of Awareness). The Gestalt Journal Press is a 501(c)(3) non-profit "sister organization" to the Center that "does publishing." (Rawle Dep. at 146).

**F. Sales of the Book End**

In the summer of 2022, the Institut's Board of Directors pulled the Book from sale.[3] (Robine Decl. ¶ 18). Approximately 240 sales occurred between the Book's initial publication in December 2019 and the summer of 2022. (*Id.* ¶ 19). Neither the Institut nor Renate realized any profit from sales of the Book. (*Id.*).

**G. Lawsuits**

On May 26, 2021, the Center sued Bowman, Robine, and l'Exprimerie in the Eastern District of Pennsylvania. (Filing No. 127-3, Pa. Compl.). The Center voluntarily dismissed that action four months later. (Filing No. 127-4, Dismissal).

The Center then filed another action in the Eastern District of Pennsylvania against Bowman, Robine, and the Institut on May 25, 2022. On October 19, 2022, the Pennsylvania district court granted Bowman's motion to dismiss for improper venue and lack of personal jurisdiction. (Case No. 1:23-cv-1027, Filing No. 22, Order). The Center refiled its case against Bowman in the Southern District of Indiana on November 9, 2022. (*See* Compl.).

The Pennsylvania district court entered default against the Institut on November 22, 2022. (No. 1:23-cv-1027, Filing No. 26, Entry of Default). And it granted Robine's motion to transfer venue to the Southern District of Indiana on June 13, 2023. (Case No. 1:23-cv-1027, Filing No. 59). The Center's action against Robine was consolidated into the case against Bowman on July 11, 2023. (Filing No. 78, Order on Consolidation).

[3] Bowman's testimony appears to conflict with Robine's on this subject. Bowman testified that given the Center's objection to the Book, "the Institut stopped distributing the Book in 2020." (Bowman Decl. ¶ 17).

All other facts necessary to resolve this motion will be addressed in the Discussion Section.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact" and that the "movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). Instead, the court must construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id*. A genuine dispute as to a material fact exists if, based on the evidence presented, "a reasonable jury could return a verdict for the non-moving party." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. Discussion

According to the Center, Defendants Bowman and Robine violated its exclusive license in the Manuscript by publishing and distributing the Book, which included a verbatim copy of the Manuscript. Bowman and Robine disagree with the Center for three primary reasons: (1) the Perls' heirs granted the Center an exclusive license to publish a *volume* titled Psychopathology of Awareness that included the *Manuscript*, but not the right to publish the Manuscript in isolation; (2) Gold, as Attorney-in-Fact for Renate Perls, granted Defendants a non-exclusive license to publish the Book; and (3) the Book

was published for only educational purposes and thus, constituted a "fair use" of the work under 17 U.S.C. § 107.

The court begins with the differences between exclusive and non-exclusive copyright licenses and then unravels the rights in the Manuscript, if any, granted to the Center and to the Defendants by the Perls' heirs.

**A. Exclusive and Non-Exclusive Licenses**

The Copyright Act entitles a copyright owner to certain exclusive rights, including the right "to reproduce the copyrighted work in copies" and "to distribute copies . . . of the copyrighted work to the public by sale." 17 U.S.C. § 106. A copyright owner may transfer its exclusive rights through a written license agreement. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996) (citing 17 U.S.C. § 204(a) ("A transfer of copyright ownership . . . is not valid unless an instrument of conveyance . . . is in writing[.]")). The exclusive licensee may sue for copyright infringement as the "beneficial owner of an exclusive right." 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it.").

"In an exclusive license, the copyright holder permits the licensee to use the protected material for a *specific use* and further promises that the same permission will not be given to others." *I.A.E., Inc.*, 74 F.3d at 775 (emphasis added); *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 382 (7th Cir. 2011) ("[I]f the exclusive right to reproduce (meaning exclusive of the grantor as well as all third parties) were transferred to A, the exclusive right to prepare derivative works were given to B, and the exclusive right to

distribute copies to the public were granted to C, each transferee would be entitled to sue for infringement of its particular right.")

An exclusive license differs from a non-exclusive license in three important respects. First, a copyright holder may grant a non-exclusive license orally. *I.A.E., Inc.*, 74 F.3d at 775. Second, the grant of a non-exclusive license does not transfer ownership of the copyright to the licensee. *Id.*; *see also id.* (noting the definition of "transfer of copyright ownership" in 17 U.S.C. § 101 "expressly excludes a non-exclusive license"). "The copyright owner simply permits the use of a copyrighted work in a particular manner." *Id.* Third, a non-exclusive licensee "has no standing to sue for copyright infringement." *Id.* The Seventh Circuit provided an apt example of the difference between an exclusive and non-exclusive license in *HyperQuest*:

> [I]f the owner of a copyrighted novel retains the right to publish a conventionally printed book and grants a license to another to produce the novel in all forms (including conventional printing of a book), the license is exclusive with respect to every form *except* a printed book and it is non-exclusive as to the printed books. If a third-party published an infringing book, then the person entitled to enforce the copyright remains the owner, not the holder of the non-exclusive license. If a third-party publishes an e-book, however, then the licensee has the right to sue for infringement.

632 F.3d at 384 (emphasis added).

**B. The Center's Exclusive License**

With that understanding, the court now turns to the terms of the 1991 License Agreement. The court construes the terms of a license agreement as it would any other contract under the relevant state law. *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999) (citing *Nimmer on Copyright* § 10.08 (1996)). Because Bowman is a

resident of Indiana and the Center is a resident of Maine, the court turns to the contract law of Indiana and Maine. Under those states' laws, the interpretation of an unambiguous contract is a matter of law that can be resolved on summary judgment. *Orthodontic Affiliates, P.C. v. Long.*, 841 N.E.2d 219, 222 (Ind. Ct. App. 2006); *Am. Protection Ins. v. Acadia Ins*., 814 A.2d 989, 993 (Me. 2003).

Pursuant to the 1991 License Agreement, the Perls' heirs unambiguously granted the Center the exclusive right to publish a *volume* of Frederick Perls unpublished works in the English language. (License Ag. at ECF p. 8). That volume was to be comprised of six manuscripts, one of which shared the same title as the volume: the Psychopathology of Awareness. (*Id.*). The other five manuscripts included:

> "Psychiatry in New Key," "The Self (A Cooper Union Lecture)," "Planned Psychotherapy," an untitled book chapter beginning with "Before we go on with a more detailed . . ." and an untitled manuscript that begins "What are 'we' doing to our 'selves'?"

(*Id.*). Therefore, although the License Agreement granted the Center the exclusive right to publish a *volume* titled the Psychopathology of Awareness, it did not grant the Center the exclusive right to publish only the *Manuscript*.

**C. The Non-Exclusive License and Copyright Assignments**

After Defendants published the English language version of the Book, Robine reached out to Gold, who gave him and the Institut oral "permission" to publish the Book. (Gold Decl. ¶ 8 (noting she "gave Jean-Marie Robine and the Institut [] permission to publish the manuscript" with no "limitations")). The issue is whether her "permission to publish" was in fact a license to publish under federal copyright law.

An implied non-exclusive license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute this work." *I.A.E.*, 74 F.3d at 776. "[C]onsent given in the form of mere permission or lack of objection is . . . equivalent to a nonexclusive license and is not required to be in writing." *Id.* Once an implied license is granted, it becomes irrevocable if the license is supported by consideration. *Id.* at 772. This is because "implied licenses are like implied contracts." *Id.* at 776.

Here, Leslie Gold, as Attorney-in-Fact of Renate Perls, had the authority to grant a non-exclusive license to publish the manuscript. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994) ("Each . . . co-owner has the right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits."); *Warrick v. Roberts*, 34 F. Supp. 3d 913, 919 (N.D. Ill. 2014)) ("[E]ach co-owner has an independent right to use or license the use of the copyright.") (quoting *Oddo v. Ries*, 743 F.3d 630, 632–33 (9th Cir. 1984))). Although the evidence suggests Gold granted the Institut a license to publish the Book *after* sales of the Book began,[4] she testified that she "did not place any limitations on th[e] license," and that she was paid consideration through royalties based on sales of the Book. (Gold Decl. ¶14; Robine Decl. ¶ 12; Bowman Decl.

[4] Defendants published the Manuscript a few months *before* Gold granted them a license. Any technical violation of the Perls' copyright in the Manuscript is not before the court and, in any event, appears to have been waived by the Perls' heirs.

¶ 12). Accordingly, the court finds Renate Perls (by Gold), as well as Stephen Perls, granted Defendants an irrevocable, non-exclusive license to publish the Book.

In early 2021, after being sued by the Center, Stephen and Renate Perls (by Gold) entered into a settlement agreement whereby they assigned all "right, title and interest" in the Manuscript to the Center. (*See* Copyright Assignments). At that point, the Center became the "owner" of the Manuscript. *I.A.E.*, 74 F.3d at 775 (citing 17 U.S.C. § 101) (defining a "transfer of copyright ownership" as, among other things, "an assignment")). And as Gold testified, "any rights assigned to the Center [] were subject to . . . the license to Institut [] and its collaborators." (Gold Decl. ¶ 17); *cf. Armstrong Pump, Inc. v. Hartman*, 745 F. Supp. 2d 227, 233 (W.D.N.Y. 2010) ("It is well-settled . . . that an assignee of a patent takes title to the patent subject to existing licenses.").

Based on the foregoing, the court finds, as a matter of law, that Defendants did not infringe any copyright held by the Center.

**D. Fair Use**

Lastly, Defendants raise the statutory defense of fair use, arguing that their use of the manuscript was to educate the gestalt community, not to make money. *See* 17 U.S.C. § 1707 (stating "the fair use of a copyrighted work, including such use by reproduction in copies . . . for purposes such as criticism, news reporting . . . teaching . . . , scholarship, or research, is not an infringement of the copyright"). Because the court has found Defendants did not infringe the Center's exclusive rights, the court need not reach Defendants' fair use defense.

## IV. Conclusion

For the reasons set forth above, the court **GRANTS** Bowman and Robine's Motions for Summary Judgment (Filing Nos. 127 & 129).

**IT IS SO ORDERED** this 29th day of August 2025.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.